IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| STEPHANIE B. FOSTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 5:15-cv-00016 |
| | ) | |
| GO WIRELESS, INC., | ) | By: Elizabeth K. Dillon |
| | ) | United States District Judge |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Plaintiff Stephanie B. Foster brought this suit against her former employer, Go Wireless, Inc. (Go Wireless), claiming discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e *et seq.* Foster claims that, while working for Go Wireless, she was passed over for a promotion because of her sex and disciplined in retaliation for filing a complaint with the EEOC. Go Wireless moved for summary judgment on both of Foster's Title VII claims, and Foster responded, making this matter ripe for disposition. Having reviewed the record and considered the parties' briefs, the court will grant summary judgment in favor of Go Wireless.

I. BACKGROUND[1]

In May 2010, Foster began working as a store manager for Go Wireless in Fairfax, Virginia. (Compl. ¶ 7, Dkt. No. 1; Answer ¶ 7, Dkt. No. 4.) Foster transferred to Go Wireless's

---

[1] Go Wireless's brief includes 111 paragraphs—eighteen pages—of purportedly undisputed facts and then includes supporting exhibits. Most of those facts are not addressed in Foster's brief and are therefore undisputed for purposes of summary judgment. *See* Fed. R. Civ. P. 56(e). Furthermore, the majority of Foster's sparse record citations are to her own verified statement, which in part contradicts her own deposition testimony and in part repeats conclusory allegations from her complaint that are unsupported by other evidence in the record. *See Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984) (noting that parties may not contradict deposition testimony with sham affidavits); *see also Cottom v. Town of Seven Devils*, 30 F. App'x 230, 235 (4th Cir. 2002) (finding a conclusory statement taken "almost verbatim" from plaintiff's complaint insufficient to survive summary judgment). Nevertheless, the court has considered Foster's verified statement, to the extent allowed by Rule 56(c), and recited the facts in the light most favorable to Foster.

1

Manassas, Virginia location in April 2011, and then to its Winchester–Rutherford Crossing location in October 2011. (Foster Dep. 53:3–21, Dkt. No. 27-3.) Foster was asked to transfer to Winchester–Rutherford Crossing because she was from Winchester and because she had performed well at the Fairfax and Manassas locations. (Foster Dep. 53:24–54:4.) After the transfer, Go Wireless apparently asked Foster to travel to the Manassas location periodically to help that store in some way, although the precise nature of this arrangement is not clear from the record. (*See* Foster Dep. Exs. 18–20.) As a store manager at the Winchester–Rutherford Crossing location, Foster was supervised by a district manager and by regional sales director John Jeppi. (Foster Dep. 54:20–23; Jeppi V.S. ¶¶ 1–2, Dkt. No. 27-5.)

As store manager, Foster was responsible for "coaching" and disciplining sales representatives.[2] (Foster Dep. 60:5–22.) She was also responsible for meeting a store-wide minimum sales performance standard, which measured the store's gross profit relative to the company's sales goals. (*E.g.*, Foster Dep. 114:1–22; Hernandez V.S. ¶ 2, Dkt. No. 27-4.) Store managers were given a monthly "Go Wireless Performance Scorecard" (scorecard), which quantified their sales performance and aspects of their management performance and provided them with a score out of 100. (Foster Dep. 114:23–25; *E.g.*, Foster Dep. Ex. 12.) A store manager was required to earn 80 out of a possible 100 points on his or her scorecard to meet his or her minimum sales goals. (*E.g.*, Foster Dep. 116:24–117:15.)

Foster's base pay was reduced from $17.00 per hour to $15.50 per hour in February 2012,[3] when her store was reclassified as a "band level one store." (Foster Dep. Ex. 18; Pl.'s Br.

---

[2] Throughout the record, Foster's subordinate employees are referred to interchangeably as "wireless consultants" and "sales representatives." (Foster Dep. 145:25–146:3.)

[3] In an email with Go Wireless personnel, Foster stated that her pay was reduced in February 2011, not February 2012. (Foster Dep. Ex. 18.) This appears to be an error: Foster noted she had been in the store for less than six months before the pay decrease, but in February of 2011 she had been in the Fairfax location for over six months. (*Id.*) In any event, this discrepancy is irrelevant to the court's analysis.

2

Opp'n Ex. 1, Dkt. No. 32.) In April 2012, Foster learned that her salary would be further reduced from $15.50 per hour to $11.00 per hour as part of a nationwide restructuring of Go Wireless. (Foster Dep. 63:1–19; Foster Dep. Ex. 20.) At some point, because of this pay decrease, Foster informed Jeppi that she was seeking a new job (Foster Dep. Ex. 18; Foster Dep. 71:1–19) and that she could no longer afford to travel to Manassas to assist that store. (Foster Dep. Ex. 18.)

After Foster told Jeppi that she was seeking a new job, he began making negative comments about her and her commitment to Go Wireless. In complaints to human resources personnel several months later, Foster described a specific incident where she requested a discount code from Jeppi for a customer, but then had to request an additional code because of a computer malfunction. Jeppi commented that Foster was getting codes to discount items so that she could take the items when she found a new job. (Foster Dep. Ex. 18.) Foster also complained of a few occasions on which Jeppi failed to communicate with her store about administrative changes in the company and other work-related matters; an incident in which Jeppi told Foster's employees to sell a phone without electronically bringing the phone into inventory, and then Go Wireless accused Foster of falsifying inventory records; and multiple occasions on which Jeppi accused Foster of not caring about her job and wanting to leave. (Foster Dep. Exs. 18–19.)

In April 2012, Foster applied for an available district manager position and was selected to interview. (Foster Dep. Ex. 18; Jeppi V.S. ¶ 5.) Foster contacted Jeppi and Stephanie Hernandez, the human resources manager for Foster's region (Hernandez V.S. ¶ 1), and informed them that she would be on vacation the week that the interviews were to be performed. (Foster Dep. Ex. 18.) On April 21, 2012, while Foster was traveling to her vacation destination,

Jeppi called Foster and told her that he wanted to do the interview by phone in thirty minutes. Foster responded that she was still traveling, and the interview was rescheduled for a few hours later when Foster would have arrived at her destination. During the interview, Foster mentioned that she had spoken to Jason Smith, a former Go Wireless district manager who had left the company. Jeppi "rudely interrupted" her to ask if she had been in contact with Smith about going to work for him. Foster felt that this comment was inappropriate. (*Id.*)

Jeppi interviewed Foster and approximately twelve other candidates and asked each the same set of questions, including whether they had experience managing multiple units or multiple locations. (Jeppi V.S. ¶¶ 5–6, 8; Foster Dep. 106:14–16.) According to Jeppi, Foster stated that she had no such experience. (Jeppi V.S. ¶ 7.) In her deposition, Foster testified that she could not remember how she answered that question, though in her verified statement she claimed that she never would have said that. (Foster Dep. 06:17–22.) Jeppi originally selected a female internal candidate for the position, but changed his decision in response to complaints about her unprofessional conduct. (Jeppi V.S. ¶ 9.) Jeppi then selected John Peterson, an external candidate with experience as an area sales manager for another company in the wireless communication field. (Jeppi V.S. ¶¶ 10–11.) Mr. Peterson only served for a brief period and was replaced by Robert Gorham, another external candidate with experience in regional sales management and operations positions in the wireless communications industry. (Jeppi V.S. ¶ 14; Foster Dep. 106:23–108:13.)

After Foster was not chosen for the district manager position, she contacted Jeppi to ask for feedback on what she could improve and what she did wrong in the interview process. (Foster Dep. Ex. 18.) Jeppi informed Foster that she was "one of the top candidates," but that her sales numbers held her back. (*Id.*)

4

On June 26, 2012, Foster received a record of progressive counseling, or "write-up," for failing to meet her minimum performance standards in May 2012. (Foster Dep. 117:12–15; Foster Dep. Ex. 11.) Foster admits that she failed to meet her standards for May 2012, although she notes that there were multiple months prior to May 2012 in which she failed to meet her minimum sales performance standard but was not disciplined. (Foster Dep. 117:12–25.) Several male employees in Jeppi's territory also received counseling that month for failing to meet minimum sales performance standards. (Hernandez V.S. ¶ 4.)

Between July 9 and July 17, Foster exchanged a number of communications with Hernandez and Kristine Curtiss, Go Wireless's VP of human resources. In a series of emails, Foster complained about Jeppi's inappropriate comments to her at work and in her interview. (Foster Dep. Ex. 18–19.) In those emails, Foster indicated that she felt she was being "discriminated against," described the purported instances of discrimination discussed *supra*, and claimed that Jeppi's mistreatment began when she told him she was seeking a new job and would not support the Manassas store. (*Id*.) Curtiss informed Foster that Jeppi denied making the comment about Foster getting discount codes so that she could take items when she left the company, but noted that in any event the statement did not seem to be discriminatory. (Foster Dep. Ex. 19.)

On July 18, 2012, Foster filed her first charge of discrimination with the EEOC. (Compl. ¶ 11; Foster Dep. 148:24–149:9.) Although that EEOC charge is not in the record, it appears Foster claimed that Go Wireless discriminated against her on the basis of her sex by not selecting her for the April 2012 district manager position and by writing her up in June 2012 for not meeting her minimum sales standards. (Def.'s Br. Ex. E; Compl. ¶¶ 8–9.)

Foster contacted Curtiss and Hernandez again on July 20, 2012. In her email, she stated: "I believe that John [Jeppi] has been discriminating against me as a female, and I have spoken to several other females who have experienced the exact same derogatory, chauvinistic treatment by him, as John does not make his negative attitude toward females a secret." (Foster Dep. Ex. 20.) Foster reiterated that "[i]t wasn't until after I confided in [Jeppi] that he started making unprofessional, degrading, and rude comments to me. It was after I answered John honestly that this harassment started." (*Id.*) Foster also claimed that other Go Wireless employees had failed to meet their sales goals for May and had not been punished. (*Id.*) Curtiss informed Foster that Jeppi "denied treating [her] differently." (*Id.*)

That same day, Foster received her scorecard for the June 2012 review period, for which she earned 20.1 points. (Foster Dep. Ex. 12.) Foster contested 4.4 of the points that were withheld, four related to inventory and .4 related to training (Foster Dep. 126:13–128:5; 129:16–130:12; 133:1–133:9). She was ultimately credited with the four points for inventory, bringing her score for the June 2012 review period up to 24.1 points. (Foster Dep. 135:1–17 & Ex. 13.) Although this score was considerably below the required score of 80, Foster was not punished for her June performance, though male employees in Jeppi's territory were punished for failing to meet their June sales goals. (Hernandez V.S. ¶¶ 5, 6.)

Foster underperformed again in July. She earned 24 points on her July scorecard, which she received on August 30, 2012. (Foster Dep. Ex. 14.) Once again, Foster challenged her score in the "inventory" category, and was ultimately awarded two additional points, bringing her score for the July review period to 26. (Foster Dep. Ex. 15, 138:22–139:20.) As with the June review period, Foster was not punished, though male employees in Jeppi's territory were punished for their July performance. (Hernandez V.S. ¶ 7, 8.)

On September 11, 2012, Foster once again applied for an open district manager position. (Foster Dep. Ex. 10.) Although she initially missed the application window, Go Wireless re-opened the position in order to allow Foster to apply. (*Id*.; Foster Dep. 109:20–110:13.) However, Foster was ultimately informed by Hernandez that she did not meet the criteria for the position. (Foster Dep. 108:25–109:13.) Nanette Hott—a female—was hired for that position on October 5, 2012. (Foster Dep. 110:14–19; Hernandez V.S. ¶ 23; Jeppi V.S. ¶ 18.)

On September 20, 2012, Foster received her scorecard for the August 2012 review period, on which she earned 37.5 points—her fourth consecutive failing scorecard—and was written up a second time for her poor sales performance. (Foster Dep. Exs. 16, 17.) Foster did not dispute her August score. (Foster Dep. 142:1–5.) The scorecard reiterated that a score below 80 could lead to disciplinary action including termination. (Foster Dep. Ex. 16.) As with the June and July review periods, several males in Jeppi's territory were also disciplined for failing to meet their minimum sales performance standards for August 2012. (Hernandez V.S. ¶ 10.)

On September 26, 2012, Foster filed her second EEOC charge, claiming that her September 20 write-up was retaliation for filing her earlier EEOC charge. (Def.'s Br. Ex. F.) On Friday, October 5, 2012, believing that she would either be forced to quit or terminated, Foster resigned from her position at Go Wireless.[4] (Foster V.S. ¶ 15(c); Pl.'s Br. Opp'n Ex. 4.) She began working at a new job the following Monday, October 8, 2012. (Foster Dep. 154:20–25.)

Foster filed this suit against Go Wireless on March 6, 2015. (*See* Compl.) Count one of her complaint asserts that Go Wireless discriminated against her on the basis of her sex by failing to promote her to a district manager position, and count two asserts that Go Wireless retaliated against her for filing her July 18, 2012 EEOC claim. Go Wireless moves for summary judgment

---

[4] Foster does not claim constructive discharge. (Pl. Br. Opp. 4, Dkt. No. 32.)

on both claims, arguing that Foster fails to state prima facie claims of discrimination and retaliation, and cannot overcome Go Wireless's non-discriminatory explanation for its actions.

## II.  DISCUSSION

### A.  Summary Judgment Standard

Summary judgment is proper where "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine issue of material fact exists when a rational trier of fact, considering the evidence in the record as a whole, could find in favor of the non-moving party.  *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).  "Summary judgment is appropriate only if taking the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party, 'no material facts are disputed and the moving party is entitled to judgment as a matter of law.'"  *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc) (quoting *Ausherman v. Bank of Am. Corp.*, 352 F.3d 896, 899 (4th Cir. 2003)).  Put differently, summary judgment should be entered if the court finds, after a review of the record as a whole, that no reasonable jury could return a verdict for the non-moving party.  *See Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 958–59 (4th Cir. 1996).

### B.  Analysis

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ."  42 U.S.C. § 2000e-2(a)(1).  Title VII also makes it unlawful for an employer to retaliate against an employee because she filed a charge of discrimination with the EEOC.  *See* 42 U.S.C. § 42 U.S.C. 2000e-3(a).

8

A plaintiff may show discriminatory or retaliatory animus sufficient to survive summary judgment in two ways. First, she may provide direct evidence—that is, "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th Cir. 2006) (quoting *Taylor v. Virginia Union Univ.*, 193 F.3d 219, 232 (4th Cir. 1999) (en banc)); *see O'Connor v. Consol. Coin Caterers Corp.*, 56 F.3d 542, 548 (4th Cir. 1995) ("Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact . . . without any inference or presumptions.") (internal quotations omitted), *rev'd on other grounds*, 517 U.S. 308 (1996); *see also Martin v. Scott & Stringfellow, Inc.*, 643 F. Supp. 2d 770, 788 (E.D. Va. 2009) (applying the same in context of an ADEA retaliation claim), *aff'd*, 352 F. App'x 778 (4th Cir. 2009).

Second, where direct evidence is lacking, a plaintiff can avoid summary judgment by relying on the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), which is applicable to both discrimination and retaliation claims. *See Mackey v. Shalala*, 360 F.3d 463, 468 (4th Cir. 2004) (applying *McDonnell Douglas* to a discrimination claim); *Thurston v. Am. Press, LLC*, 497 F. Supp. 2d 778, 781–82 (W.D. Va. 2007) (applying *McDonnell Douglas* to a retaliation claim). Under this framework, the plaintiff bears the initial burden of making a prima facie case of discrimination or retaliation. *McDonnell Douglas*, 411 U.S. at 802. If the plaintiff establishes a prima facie case, the burden of production shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for its action. *Id.*; *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004). If the employer provides such a reason, "the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's stated reasons 'were not its true reasons, but were a pretext for discrimination.'" *Hill*

9

*v. Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 285 (4th Cir. 2004) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142–43 (2000)). The plaintiff need not present additional evidence to show pretext other than the evidence offered in support of her prima facie case. *Thurston*, 497 F. Supp. 2d at 782. Instead, the burden of demonstrating pretext "merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination." *Hill*, 354 F.3d at 285 (quoting *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)) (alterations in original); *see also Merritt v. Old Dominion Freight Line*, 601 F.3d 289, 294–95 (4th Cir. 2010).

Foster does not argue that she has presented direct evidence of discrimination or retaliation and, in any event, the record provides no such evidence. *See Heiko v. Colombo Sav. Bank, F.S.B.*, 434 F.3d 249, 258 (4th Cir. 2006) ("Because Colombo disclaims any suggestion that its decision was founded on Heiko's disability, this case is properly analyzed under the familiar framework set forth in [*McDonnell Douglas*] and its progeny."). Accordingly, the court analyzes Foster's discrimination and retaliation claims under the *McDonnell Douglas* framework.

### I. Discrimination Claim

Foster claims that Go Wireless's decision not to promote her to the available district manager position in April 2012 was based on her sex. Go Wireless argues that, because the circumstances surrounding its decision not to promote her do not give rise to an inference of unlawful discrimination, Foster has failed to make out a prima facie case of sex discrimination.[5] However, the court need not resolve this issue because Foster has not overcome Go Wireless's

---

[5] A prima facie case of sex discrimination on a failure to promote theory requires Foster to show that (1) she is a member of a protected class; (2) her employer had an open position for which she applied; (3) she was qualified for the position; and (4) she was rejected for the position under circumstances giving rise to an inference of unlawful discrimination. *Mackey*, 350 F.3d at 468; *Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 545 (4th Cir. 2003); *Thurston*, 497 F. Supp. 2d at 782.

nondiscriminatory explanation for its decision not to promote her: that she was not the most qualified candidate for the district manager position.

Go Wireless's claim that Foster was not the most qualified candidate is sufficient to rebut her claim of discrimination. "[R]elative employee qualifications are widely recognized as valid, nondiscriminatory bases for any adverse employment decision." *Evans*, 80 F.3d at 960; *see Heiko*, 434 F.3d at 259 (finding that there was "no doubt" that the defendant had successfully rebutted the plaintiff's prima facie case by responding that it selected an alternate candidate "due to her superior qualifications"); *Mackey*, 360 F.3d at 468; *see also Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998) (finding that relative industry experience was a legitimate basis for deciding between candidates for a job); *accord Brinkley v. Harbour Rec. Club*, 180 F.3d 598, 611 (4th Cir. 1999). As discussed, the two men ultimately hired to fill the open district manager position both had prior experience as district managers in the wireless communications industry. (Hernandez V.S. ¶¶ 16, 20; Jeppi V.S. ¶¶ 11, 14.) Foster never held the title of district or regional manager, and told Jeppi in her interview that she had no experience being responsible for multiple units or multiple locations.[6] (Jeppi V.S. ¶ 7.) Furthermore, the record supports Jeppi's explanation that Foster had poor sales numbers: Foster admits that prior to her application for that position she had multiple months in which she failed to meet her minimum sales requirements. (*See generally* Pl.'s Br. Opp'n; Foster V.S. ¶ 1; Foster Dep. 117:20–25.)

---

[6] Although Foster apparently characterizes her own prior experiences as an "indirect coordinator" from 2004 to 2007 as multi-location management experience, she admitted in her deposition that she was not sure what she told Jeppi during her interview. (Foster Dep. 103:10–106:22; Ex. 7.) Foster's claim, in her subsequent verified statement, that she never would have told Jeppi that she lacked "multi-unit location experience" (Foster V.S. ¶ 14) is insufficient to create a triable issue of fact on this point. *See Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984) ("If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.") In any event, her own characterization of her experience would not make her more qualified than the selected candidates here.

11

Accordingly, Foster's claim can survive summary judgment only if she has come forward with sufficient evidence of pretext. *Mackey*, 360 F.3d at 468.

"The Supreme Court has made clear that to be pretextual, a reason must be false and wrongful animus must be 'a but-for cause of the challenged employment action.'" *Engler v. Harris Corp.*, 628 F. App'x 165, 168 (4th Cir. 2015) (per curiam) (quoting *Univ. of Tex Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2532–34 (2013)); *see Foster v. Univ. of Md. E. Shore*, 787 F.3d 243, 254 (4th Cir. 2015). While evidence that the plaintiff was more qualified than the selected applicant may establish pretext, *Heiko*, 434 F.3d at 259–60, the trier of fact may also "infer the ultimate fact of discrimination from the falsity of the employer's explanation." *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 269 (4th Cir. 2005) (quoting *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 648 n.4 (4th Cir. 2002)). Thus "[a] plaintiff alleging a failure to promote can prove pretext by showing that she was better qualified, or by amassing circumstantial evidence that otherwise undermines the credibility of the employer's stated reasons." *Heiko*, 434 F.3d at 259; *Dennis*, 290 F.3d at 648 n.4.

Foster does not argue that she was more qualified than the individuals ultimately selected for the district manager position in April 2012. Instead, she argues that the relative qualifications of the men selected as district managers are not relevant here because she was never seriously considered for the position.[7] (*See* Pl.'s Br. Opp'n 1–2.) While Foster cites no authority for this proposition,[8] this is basically an argument that circumstantial evidence casts doubt on Go Wireless's stated reason for its decision. *See Heiko*, 434 F.3d at 259; *Dennis*, 290 F.3d at 648

---

[7] Foster makes no pretext argument in her brief. However, because Foster is not required to present additional evidence in support of her pretext argument, *see Thurston*, 497 F. Supp. 2d at 782, the court will analyze her arguments in support of her prima facie case as pretext arguments.

[8] Or, in fact, for any other proposition: Foster's brief does not include a single citation to supporting authority.

12

n.4. Evidence that Foster's application was not considered because she is a woman would certainly cast doubt on Go Wireless's claim that it rejected her because of her relative qualifications.

There is simply nothing in the record, however, to suggest that Foster was not seriously considered for the April 2012 district manager position. Jeppi selected Foster to interview for that position and asked her the same questions he asked the other candidates. (Jeppi V.S. ¶¶ 5–6, 8.) Jeppi also told Foster that she was competitive for the position, though her admittedly poor sales numbers held her back. (Foster Dep. Ex. 18.) Although Foster seems to suggest that Jeppi wrote her up in order to disqualify her for the April 2012 position (*See* Pl.'s Br. Opp'n 3–4), he did not do so until June 26, 2012, over two months after she interviewed. Thus Foster's claim that she was somehow disqualified from being considered for that position is mere speculation, insufficient to survive summary judgment. *E.g.*, *Cox v. Cty. of Prince William*, 249 F.3d 295, 300 (4th Cir. 2001).

Foster also argues that irregularities in her interview process suggest that she was not seriously considered for the position. Specifically, Foster claims that her interview was "clearly no more than an afterthought" and that Jeppi was simply "going through the motions," since other candidates interviewed face to face but Foster interviewed over the phone. (Pl.'s Br. Opp'n 2–3.) However, the record indicates that Foster told Jeppi and Hernandez that she would be on vacation the week that interviews were to be performed. (Foster Dep. Ex. 18.) Foster, who is unaware of whether any other candidates were on vacation when the interviews were performed (Foster Dep. 158:1–4), identifies no one who was unavailable that week but still received a face to face interview. Thus the record does not support Foster's claim that her phone interview was

13

evidence of discrimination; if anything, it merely suggests that Go Wireless attempted to accommodate Foster's vacation schedule.

Foster has also failed to come forward with evidence that the various instances of unprofessional conduct of which she complained were in any way connected to her sex. While Foster certainly complained about inappropriate comments and behavior, Foster herself suggested that those comments were based not on her sex but on a perceived lack of commitment to her job. Foster made clear that the mistreatment only began when she told Jeppi she would not support the Manassas store and was seeking a new job. (*See* Foster Dep. Ex. 18 at 1 ("[E]ver since I let John know that I was no longer able to go to the Manassas store to help out I have been treated differently."); *id.* ("Ever since I told [Jeppi] that I was looking for a new job he has made very inappropriate comments to me about my performance here at Go Wireless."); Foster Dep. Ex. 19 at 3 ("At the time he seemed to understand my position but since then he has used my statement [that I was looking for another job] as a reason to antagonize me."); Foster Dep. Ex. 20 at 2 ("It wasn't until after I confided in [Jeppi], that he started making unprofessional, degrading, and rude comments to me. It was after I answered John honestly that this harassment started . . . .").) The specific disparaging statements Foster describes also relate only to her commitment to the company, not her sex. (*See* Foster Dep. Ex. 18 at 1 (describing instance in which Jeppi accused Foster of "getting codes to discount items so that I could take them from the company under the radar because I was getting to leave soon *since I was looking for a new job*.") (emphasis added); *id.* (noting that Jeppi said "I know you don't care because you are looking for another job anyway" while writing Foster up); *id.* at 2 (describing Jeppi's interruption during Foster's interview to ask whether she had been in contact with her former district manager about going to work for him); Foster Dep. Ex. 19 at 3 (claiming that Jeppi's

14

comment "I know you don't care about your job anymore" was inappropriate).) Foster's conclusory allegations of discrimination notwithstanding, Jeppi's conduct toward Foster does not suggest that Go Wireless's failure to promote her was discriminatory.[9]

With her response brief, Foster submitted verified statements from herself and Jason Smith, identifying inappropriate language that Jeppi used to describe women and suggesting that Jeppi was generally disrespectful to a specific female district manager. (Foster V.S. ¶ 11; Smith V.S. ¶ 5–6.) Although both Foster and Smith claim that Jeppi used derogatory language to describe women in conversations with male district managers, neither claims that they actually heard Jeppi make the statements.[10] *See Christian v. S.C. Dep't of Labor Licensing & Regulation*, 651 F. App'x 158, 165 (4th Cir. 2016) (finding insufficient evidence of discrimination where "[c]areful inspection of the record reveal[ed] that no witness testified that he or she had personally heard another employee use a racial epithet, only rumors to that effect."). Furthermore, "in the absence of a clear nexus with the employment decision in question, the materiality of stray or isolated remarks is substantially reduced." *Merritt*, 601 F.3d at 300; *see Christian*, 651 F. App'x at 165; *Brinkley*, 180 F.3d at 608. Foster has not come forward with evidence showing that these statements were connected to Jeppi's decision not to promote her, and, unsupported by other evidence of discrimination, they are insufficient to rebut Go Wireless's nondiscriminatory explanation for the decision.[11]

---

[9] Foster apparently relies on the various allegations of unprofessional conduct to support her claim that her non-promotion was discriminatory, not as independent bases for her discrimination claim. To the extent Foster attempts to assert stand-alone discrimination claims based on Jeppi's statements, they fail for the same reasons.

[10] According to Go Wireless, Foster specifically denied hearing Jeppi make this statement in her deposition. However, the relevant section of Foster's deposition (Foster Dep. 192:1–14) is not included in the record, and the court will not consider it.

[11] Citing her own verified statement, Foster asserts that Jeppi never hired another woman for a district manager position except for Nanette Hott, who he hired after Foster filed her EEOC charges. (Pl.'s Br. Opp'n 2.) Foster's verified statement does not include a statement to that effect.

15

Considering the record as a whole, Foster has failed to show, by direct or circumstantial evidence, that Go Wireless's failed to promote her because of her sex. Because she has not produced evidence to overcome Go Wireless's non-discriminatory explanation for her non-promotion, that claim cannot survive summary judgment.

To the extent that Foster seeks to assert a discrimination claim based her June 2012 write-up, that claim fails for substantially the same reasons. Foster admits that she failed to meet her minimum performance standard for May 2012 and provides no evidence otherwise connecting the write-up to her sex. *See Evans*, 80 F.3d at 960 ("Job performance . . . [is] widely recognized as [a] valid, non-discriminatory bas[is] for any adverse employment decision."). As discussed, Jeppi's unprofessional statements—cited as circumstantial evidence of discrimination—related only to Foster's commitment to the company and began only after Foster told him she was seeking a new job. And although Foster argues that the fact that she was not written up for failing to meet her sales goals prior to June 2012 supports her claim of discrimination, the court disagrees. Indeed, the fact that Jeppi could have disciplined Foster multiple times before June 2012, but did not do so until she told him that she was looking for another job, supports the conclusion that his decision was not based on her sex. Accordingly, Foster's discrimination claim based on the write-up cannot survive summary judgment.

## II. Retaliation Claim

The sole basis for Foster's retaliation claim is her write-up on September 20, 2012, for her August 2012 scorecard performance. Foster claims that she was written up in retaliation for her EEOC charge, which she filed July 18, 2012. As with Foster's discrimination claim, the court need not determine whether Foster has made a prima facie case of retaliation. Assuming

16

that she has, Go Wireless has come forward with a non-retaliatory reason for its action, and Foster has failed to show that the explanation was pretext.

Go Wireless's non-retaliatory explanation for the write-up—that Foster failed to meet her required minimum performance standards for the month of August—is clearly sufficient to rebut Foster's prima facie case. *See Evans*, 80 F.3d at 960. Foster does not dispute that she earned 37.5 points on her August scorecard, well below the required 80 points, and did not challenge the points awarded at the time. (Foster Dep. Ex. 16; Foster Dep. 142:1–5.) There is also no dispute that failure to achieve the required minimum performance standards was a sufficient basis for discipline; indeed, Foster was written up for the same thing in June, nearly a month before she filed her first EEOC charge. (Foster Dep. Ex. 11.) Accordingly, the burden shifts to Foster to show that this articulated reason was a pretext for retaliation based on her EEOC charge. *See Heiko*, 434 F.3d at 258.

As with her discrimination claim, Foster has failed to come forward with evidence showing that Go Wireless's decision to write her up was a pretext for retaliation. As Go Wireless notes, Jeppi was unaware that Foster had filed a discrimination charge with the EEOC until after she resigned on October 5, 2012. (Jeppi V.S. ¶¶ 22–23.) Of course, if Jeppi did not know Foster had filed an EEOC charge, his decision to write her up could not have been based on that charge. *See Thurston*, 497 F. Supp. 2d at 782 (noting that "a plaintiff in a retaliation case must show, at the very least, that the defendant was aware of [him] engaging in protected activity") (alteration in original) (quoting *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 501 (4th Cir. 2005)).

In response, Foster argues that "it defies all common sense" to believe that Go Wireless did not share the EEOC complaint with Jeppi, the individual accused of discrimination. (Pl.'s

17

Br. Opp'n. 5.) Foster also relies on Curtiss's statement in her August 22, 2012 letter to the EEOC, which mentions an investigation into Foster's claims of discrimination and a statement from Jeppi (*Id.* at Ex. 1), claiming that this is tantamount to an admission that Go Wireless discussed the charge with Jeppi. (*Id*. at 5–6.)

Foster's arguments are unavailing. Although Curtiss's letter to the EEOC indicates that human resources personnel discussed Foster's allegations of discrimination with Jeppi, it does not show that they did so in response to the EEOC charge or that Jeppi knew of the EEOC charge. Go Wireless investigated Foster's allegations of discrimination and got a statement from Jeppi in response to the complaints Foster made between July 11 and July 20, 2012.[12] (Foster Dep. Exs. 18–20.) Although Foster filed her EEOC charge on July 18, 2012, she admitted that she never told anyone at Go Wireless that she filed the charge or discussed the charge with Jeppi, Hernandez, or Curtiss (Foster Dep. 149:17–19, 168:18–169:1.), and Go Wireless did not receive the documents from the EEOC until August 21, 2012, the day before Curtiss wrote her letter.[13] (Pl.'s Br. Opp'n Ex. 1.) Since Go Wireless conducted the investigation described in Curtiss's letter before it knew that Foster had filed an EEOC charge, the letter does not controvert Jeppi's statement that he was unaware of the EEOC charge. Accordingly, Foster cannot establish that Jeppi's decision to write her up was a pretext for retaliation, and Foster's retaliation claim must fail.

---

[12] Foster does not base her claim on those complaints.

[13] Thus, even if Jeppi had been aware of the EEOC charge, Foster's contention that Go Wireless wrote her up "the very month that the employer learned that she had filed a charge of discrimination" is incorrect. (Pl.'s Br. Opp'n 6.) Although she was written up for her performance on her August scorecard, she did not receive that scorecard until September 20, 2012. (Foster Dep. Ex. 16.) She received her failing scorecard for July on August 30, 2012—over a week after Go Wireless learned that she had filed an EEOC charge—and was not disciplined. (Foster Dep. Ex. 14.)

## III. CONCLUSION

For the foregoing reasons, the court will grant Go Wireless's motion for summary judgment. An appropriate order will be entered.

Entered: March 10, 2017.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge